Grafton
No. 2005-809

JOHN MILLIKEN & a.

v.

DARTMOUTH-HITCHCOCK CLINIC & a.

Argued: November 8, 2006
Opinion Issued: December 28, 2006

*Van Dorn and Curtiss, PLLC,* of Orford (*Robin C. Curtiss* and *Edward M. Van Dorn Jr.* on the brief, and *Mr. Van Dorn* orally), for the plaintiffs.

*Orr & Reno, P.A.,* of Concord (*Ronald L. Snow* and *Emily Gray Rice* on the brief, and *Mr. Snow* orally), for the defendants.

HICKS, J. The plaintiffs, John Milliken, individually, and Dianne Milliken, individually, and as next friend of their young son, appeal certain evidentiary rulings of the Superior Court (*Houran,* J.) made before and during the trial of this medical malpractice case. Specifically, they allege error with regard to the admission of testimony from three of the defendants' expert witnesses. We affirm.

The jury could have found the following. Ms. Milliken was admitted to defendant Dartmouth-Hitchcock Medical Center (DMHC) on March 4, 2000. She was twenty-eight weeks pregnant and suffering from premature preterm rupture of uterine membranes. Milliken remained hospitalized for the next four weeks at DMHC. On March 29, 2000, Milliken's abdomen became progressively more tender, and Dr. Michele Lauria, a maternal fetal medicine specialist, ordered an amniocentesis which revealed fetal lung maturity and chorioamnionitis, an intrauterine infection. Based upon the amniocentesis results, Lauria ordered that Milliken be given pitocin to induce labor. Lauria's shift then ended and she left the hospital. Milliken's care was assumed by another physician.

Milliken was monitored throughout the night of March 29, 2000, and despite the pitocin, she never went into active labor. At 7:00 a.m. on March 30, 2000, an emergency caesarean section was recommended. The surgery revealed that the baby's head was constricted by the lower uterus, a rare condition known as Bandl's Ring. The baby was delivered suffering from a deformed and bruised skull, as well as severe brain damage.

The plaintiffs brought suit on March 28, 2003, against DMHC and several physicians, including Lauria, involved in the care of Milliken and her son. Lauria was subsequently dismissed as a defendant. The plaintiffs' complaint alleged, *inter alia,* failure properly to monitor for infection, failure to recognize a lack of progress in labor, and failure to timely

perform a caesarean section. After a jury trial, a verdict was returned for the defendants.

The issues raised on appeal are whether the trial court erred by allowing Dr. Mary D'Alton and Lauria to testify regarding the timing and cause of the injury and by allowing Dr. Robert Zimmerman, the defendant's expert radiologist, to testify regarding the timing of the injury. We address the testimonies of each witness in turn, applying the correct standard of review: the trial court retains the discretion to admit expert testimony, *In the Matter of Letendre & Letendre*, 149 N.H. 31, 37 (2002), and its decision will be reviewed under an unsustainable exercise of discretion standard, *McLaughlin v. Fisher Engineering*, 150 N.H. 195, 197 (2003). To show that the trial court's decision was not sustainable, the appealing party must show that the ruling was "clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

*I. Testimony of Mary D'Alton, M.D.*

The plaintiffs first argue that D'Alton's testimony on the cause and timing of the baby's injury was inadmissible because: (1) her opinions on these issues were not included in her report in violation of RSA 516:29-b, II (Supp. 2006); and (2) she was not qualified to give an opinion on these issues. The defendants argue that the plaintiffs have not preserved these arguments for our review. Alternatively, the defendants argue that even if these issues were preserved, the trial court did not engage in an unsustainable exercise of discretion. As we will not review any issue that was not raised below, *State v. Blackmer*, 149 N.H. 47, 48 (2003), we first address the preservation issue.

Before trial, the plaintiffs filed a motion *in limine* to preclude D'Alton from testifying about the timing of the baby's injury, claiming that it lacked the requisite indicia of reliability required by New Hampshire Rule of Evidence 702 (Rule 702). In denying this motion, the court reviewed D'Alton's deposition and held that her opinion was sufficiently reliable on the issue of timing. At trial, the plaintiffs objected only once during D'Alton's testimony regarding an issue that they have not appealed. The record does not reflect that any post-trial motions were filed.

"Generally, a [party] must make a specific and contemporaneous objection during trial to preserve an issue for appellate review." *Klar v. Mitoulas*, 145 N.H. 483, 488 (2000) (quotation omitted). The burden is on the appealing party to demonstrate that the issues on appeal were raised before the trial court. *Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004). This allows the trial court to consider errors as they occur and

remedy them as necessary. *State v. Ayer*, 150 N.H. 14, 21 (2003), *cert. denied*, 541 U.S. 942 (2004). However,

> [a] motion *in limine* is sufficient to preserve an issue for appeal without an objection at trial if the trial court definitively rules on the issue prior to trial. A ruling on a motion *in limine* is definitive when the court is sufficiently alerted to the issue and the court's written order demonstrates that it considered the issue and ruled on it.

*Klar*, 145 N.H. at 488-89 (quotation omitted).

The defendants argue that the plaintiffs' motion *in limine* "is insufficient as a matter of law to preserve the issues ... on appeal concerning D'Alton's testimony" because "[t]he sole issue raised in plaintiffs' motion concerned the *unreliability* of D'Alton's opinion on the timing of [the baby's] injury" and therefore no definitive pretrial ruling on the plaintiffs' appeal issues was made by the trial court. We agree that the issues regarding D'Alton's report and her qualifications to testify on the cause of the injury were not preserved by the plaintiffs' motion *in limine*. However, we hold that the motion did preserve the issue regarding D'Alton's qualifications to testify on the timing of the injury.

■ The plaintiff's motion *in limine* argued only that D'Alton's testimony regarding timing would be unreliable. The motion did not argue that the testimony was inadmissible because the defendants failed to comply with the disclosure requirements of RSA 516:29-b (Supp. 2006) or Superior Court Rule 35(f). The trial court's order denying the plaintiffs' motion specifically focused upon the issue of reliability and did not discuss disclosure issues. Likewise, neither the plaintiffs' motion nor the court's order addressed D'Alton's testimony about the cause of the injury. Accordingly, we hold that the trial court was not sufficiently alerted to these issues and therefore they were not preserved by the motion *in limine*. As no objections on these issues were made at trial, we find that they are not preserved for our review.

■ In contrast, the plaintiffs' motion *in limine* was sufficient to preserve their argument that D'Alton was not qualified to offer an opinion regarding timing as required by Rule 702 and RSA 516:29-a (Supp. 2006). The plaintiffs' motion alleged that D'Alton's testimony was unreliable, in part, because she was only the "[d]efendants' liability expert" who planned to "defer to the ... pediatric neurologist on the timing of [the] injuries." In its order, the trial court cited to Rule 702 and RSA 516:29-a, which deal with expert qualifications, and ruled: "that [D'Alton] defers to pediatric neurologists on the exact timing of [the] injury does not undercut her

*qualification* to offer the opinion at issue here." (Emphasis added.) Accordingly, as this issue was preserved for our review, we address it.

The plaintiffs argue that D'Alton is not qualified to offer an opinion on the timing of the injury because: (1) her specialty is maternal fetal medicine; (2) she has never seen a Bandl's Ring in a premature infant; and (3) she admitted that she would defer to a pediatric neurologist or radiologist on the timing. We disagree.

> Under Rule of Evidence 702, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto. In deciding whether to qualify a witness as an expert, the trial judge must conduct an adequate investigation of the expert's qualifications. Because the trial judge has the opportunity to hear and observe the witness, the decision whether a witness qualifies as an expert is within the trial judge's discretion.

*Hodgdon v. Frisbie Mem. Hosp.*, 147 N.H. 286, 289 (2001) (quotation, citation, and ellipsis omitted). RSA 516:29-a provides, in pertinent part:

> A witness shall not be allowed to offer expert testimony unless the court finds:
> (a) Such testimony is based upon sufficient facts or data;
> (b) Such testimony is the product of reliable principles and methods; and
> (c) The witness has applied the principles and methods reliably to the facts of the case.

RSA 516:29-a, I.

■■■■ D'Alton's background includes many years in the field of obstetrics and gynecology. She is a supervisor at her hospital, New York Presbyterian Hospital, and the author of numerous medical chapters, books, and abstracts. In her deposition, D'Alton gave several reasons to support her opinion on timing, referring to her experience in delivering "many, many babies in [her] entire practice and witness[ing] them and see[ing] the results." Having this information before it, the trial court reasonably could have found that she was qualified to give her opinion regarding the injury. "The lack of specialization in a particular medical field does not automatically disqualify a doctor from testifying as an expert in that field." *Hodgdon*, 147 N.H. at 289. Accordingly, we cannot find that the trial court committed an unsustainable exercise of discretion in permitting D'Alton to testify regarding the cause and timing of the injury.

## II. Testimony of Michele Lauria, M.D.

The plaintiffs next assert that Lauria should not have been permitted to testify regarding the causation and timing of the baby's injury because: (1) the defendants did not disclose her as an expert as required by RSA 516:29-b and Superior Court Rule 35(f); and (2) Lauria was not qualified to give such opinions. The defendants again argue that these issues were not preserved for appeal. We agree.

Before trial, the plaintiffs filed a broad motion *in limine* "to exclude any opinion testimony from physicians testifying for the defense for whom no expert opinions have been disclosed." The court did not directly rule on the plaintiffs' motion, finding that the issue was not ripe. The record does not reveal that the motion was renewed.

■ Applying the same rule regarding preservation and motions *in limine* from *Klar*, discussed above, we hold that the plaintiffs' motion *in limine* was insufficient to preserve the issue regarding disclosure of Lauria as an expert. The court made no definitive ruling on the motion and Lauria was not even specifically mentioned in the motion. Since the motion *in limine* was insufficient to preserve this issue, a timely objection at trial was required. *Klar*, 145 N.H. at 488-89.

At trial, Lauria, who had previously been a party defendant, was called as the plaintiffs' witness. During examination by the plaintiffs' counsel, Lauria was asked the following question: "And certainly this baby was not injured when you left to go home, or you . . . wouldn't have gone home, isn't that fair?" She responded: "Oh, sir, I . . . think that [the] Bandl's ring was there for a very long time in that if you look at what happened to the skin on his head, I think easily [it] could have happened before I left that evening." This testimony concerning the timing of the injury continued for some time without objection.

■ On appeal, the plaintiffs argue that Lauria's responses were not prompted by the plaintiffs' counsel and did not respond to the questions asked. However, the plaintiffs' counsel submitted no objection, and did not request a bench conference or *voir dire* at the time of this testimony. The first objection to Lauria's testimony came during the defendants' cross-examination. An objection made later in the witness's testimony, during cross-examination by the defense, does not preserve this issue on appeal. *Cf. State v. LaBranche*, 118 N.H. 176, 179 (1978) ("The fact that defense counsel raised the objection and requested a mistrial in each instance after a few additional questions and answers had ensued is of no consequence." (emphasis added)).

We also hold that the issue regarding Lauria's qualifications to offer an opinion on causation and timing was not preserved. The record does not reflect that a motion *in limine* was ever filed on this issue and we reiterate our above discussion regarding the lack of an objection to Lauria's testimony on causation and timing during examination by the plaintiffs' counsel.

### III. Testimony of Robert Zimmerman, M.D.

The plaintiffs next argue that portions of Zimmerman's testimony should have been excluded because: (1) his testimony was not the product of reliable principles and methods; and (2) the exhibits used during his testimony were not disclosed to the plaintiffs as required by RSA 516:29-b. The defendants argue that these issues were not preserved below. Alternatively, the defendants argue that the plaintiffs waived their right to contest Zimmerman's testimony on the basis of unreliable principles and methods because the plaintiffs' counsel conceded this issue below.

On August 31, 2005, and October 4, 2005, the plaintiffs filed motions *in limine* to preclude Zimmerman from testifying regarding the timing of the baby's injury. The trial court did not address these motions until the plaintiffs' objection during Zimmerman's testimony. The trial court overruled the objection and permitted the testimony, holding that although Bandl's Ring was outside Zimmerman's area of expertise, "[t]hat doesn't mean he can't testify to other circumstances concerning timing, including the timing of edema . . . ." This issue was properly preserved through the motions *in limine* and the objection at trial.

On appeal, the plaintiffs argue that Zimmerman's testimony was the product of unreliable principles and methods; they allege inconsistencies in his report and deposition testimony regarding timing, and point to statements made by Zimmerman that his opinion was "based on experience." The defendants counter that the plaintiffs waived this argument by conceding before the trial court that Zimmerman was qualified to render his opinion on timing. We agree. The issue raised in the plaintiffs' notice of appeal is:

"Whether the trial court erred in allowing Dr. Robert Zimmerman to testify about the timing of [the baby's] injury based on the edema found on the CT scan." At a bench conference during Zimmerman's testimony, plaintiffs' counsel stated: "He's very capable of looking at edema and timing it, and that's very legitimate, but when we go on to these other areas, it's in the area of neurology, that's different." This statement concedes the very issue that the plaintiffs now appeal. The plaintiffs argue that this statement made by counsel during trial does not bind them. We

disagree. Admissions made by counsel during litigation are binding upon the client unless amounting to a "compromise of the claim or a confession of judgment." *Moore v. Allied Chemical Corp.*, 480 F. Supp. 377, 383-84 (E.D. Va. 1979). Therefore, this issue was waived and we do not address it.

The plaintiffs also argue on appeal that certain exhibits used during Zimmerman's testimony should not have been admitted because they were not previously disclosed in violation of RSA 516:29-b, II(c) (Supp. 2006). RSA 516:29-b, II(c) requires that any exhibits used by experts must be disclosed in their expert report, unless "otherwise stipulated or directed by the court."

The plaintiffs objected to the admission of the exhibits at trial, arguing that they were not "part of the expert disclosure." The trial court admitted the exhibits. The defendants argue that RSA 516:29-b was not specifically raised below and cannot be raised for the first time on appeal. Although RSA 516:29-b was not specifically cited by the plaintiffs during their objection, the disclosure issue was specifically raised and addressed by the trial court. Therefore, we hold that the issue was properly preserved below.

We find no unsustainable exercise of discretion regarding the trial court's ruling on the disclosure of Zimmerman's exhibits. During oral argument, defense counsel stated that an exhibit list had been provided one month before trial, in accordance with the trial court's previous scheduling order. The exhibits themselves were disclosed approximately two weeks before Zimmerman took the stand.

Although RSA 516:29-b, II may contain additional requirements regarding exhibit disclosure, these requirements are qualified by the phrase "[e]xcept as otherwise stipulated or directed by the court." Therefore, the trial court was permitted to exercise its discretion and impose different requirements. We find that the trial court engaged in a sustainable exercise of discretion in overruling the plaintiffs' objection and permitting admission of Zimmerman's exhibits.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.