JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Chelsea Mae Chafee appeals her conviction by a jury in the Fourth Judicial District Court, Missoula County, of accountability for arson, a felony, and accountability for theft, a felony. We reverse and remand for further proceedings consistent with this Opinion.
¶2 We restate the issues on appeal as follows:
¶3 Was Chafee’s counsel ineffective when he failed to offer a “mere presence” jury instruction and failed to object to evidence of other bad acts?
¶4 Is Chafee entitled to a new trial on the basis of prosecutorial misconduct?
¶5 Is Chafee entitled to a new trial based upon the cumulative error doctrine?
FACTUAL AND PROCEDURAL BACKGROUND
¶6 On the morning of October 7, 2011, Missoula County law enforcement officers responded to a report of a burning vehicle on Pattee Canyon Drive. The owners of the vehicle called 9-1-1 after approaching their unattended vehicle, noticing it was on fire, and observing a green SUV quickly drive away. Approximately an hour later, officers stopped a vehicle occupied by Chafee and Antonio Robinson. Chafee sat in the driver’s seat. Robinson and Chafee were questioned by the officers and were eventually arrested. On October 25,2011, the State charged Chafee by information with accountability for arson, a felony, in violation of §§ 45-6-103, and -2-302, MCA, and accountability for theft, a felony, in violation of §§ 45-6-301(8) and -2-302, MCA. Robinson was charged with arson and theft. He subsequently pleaded guilty and was sentenced for those charges.
¶7 Prior to trial, the State submitted proposed jury instructions. Defense counsel offered no jury instructions. Trial commenced on January 2, 2013, and went into the next day. Robinson testified that *269 Chafee pulled over, at his request, near the victims’ vehicle. According to Robinson, he then exited Chafee’s vehicle and tried to gain entry to the other vehicle. Because the doors were locked, Robinson smashed a window with a rock. He spent 10-15 minutes unloading the car’s contents and loading them into Chafee’s vehicle. He then lit the car on fire and told Chafee to drive. Robinson testified that his actions were impulsive, and that Chafee did not participate in the crimes.
¶8 Jeffrey Russell, a witness for the State, testified that Chafee had described the crimes to him. According to Russell, Chafee stated that she and Robinson had been drinking and broke into the vehicle because “it was just something to do.” Russell testified that Chafee fit the vehicle on fire with Coleman fuel or lighter fluid. Chafee’s counsel suggested during cross-examination that Russell was mad at Chafee for turning him in at work for stealing food and for unauthorized use of a computer, which resulted in Russell being fired, and that he was “willing to lie here to get her thrown in jail.” During the State’s redirect, Russell testified that Chafee was also involved in the workplace theft. The prosecutor later referenced Chafee’s alleged role in the “workplace theft” during his closing argument.
¶9 In his closing, the prosecutor asked jurors “to get in touch with yourself, with your own center, your own soul, your own heart, and ask yourself what is the truth?” After telling jurors they couldn’t “get in touch with... the essence of what you know is right and what is true” and then acquit Chafee, defense counsel objected. The District Court overruled the objection, calling the comments “argument.” The prosecutor ended by stating: “I’m asking you to look at everything and to use those attributes that the defense doesn’t want you to consider, like common sense, like what you believe is most true. And you will not be able to do that and conclude that this defendant was not involved in this case.”
¶10 On January 3, 2013, the jury found Chafee guilty of both counts. The District Court sentenced Chafee to two concurrent ten-year commitments with the Department of Corrections, each with eight years suspended. Chafee timely appealed her conviction.
STANDARDS OF REVIEW
¶11 “Only record-based ineffective assistance of counsel claims are considered on direct appeal.” State v. Ugalde, 2013 MT 308, ¶ 28,372 Mont. 234, 311 P.3d 772 (citations omitted). “To the extent such claims are reviewable, they present mixed questions of law and fact that we review de novo.” Ugalde, ¶ 28 (citations and internal quotation marks *270 omitted).
¶12 We consider closing argument statements in the context of the entire argument and review a district court’s rulings on objections to closing argument content for abuse of discretion. State v. Cooksey, 2012 MT 226, ¶ 40, 366 Mont. 346, 286 P.3d 1174 (citations omitted). A defendant must make a timely objection to closing argument statements or the objection is deemed to be waived. Cooksey, ¶ 40 (citation omitted). We may, however, review such an issue under the plain error doctrine “in those situations that implicate a defendant’s fundamental constitutional rights when failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process.” State v. Walton, 2014 MT 41, ¶ 10, 374 Mont. 38, 318 P.3d 1024 (citation and internal quotation marks omitted). Plain error review is discretionary, and we apply it on a case-by-case basis. Walton, ¶ 10 (citation omitted).
DISCUSSION
¶13 1. Was Chafee’s counsel ineffective when he failed to offer a “mere presence” jury instruction and failed to object to evidence of other bad acts?
¶14 The defense theory offered by Chafee at trial was that, though she had been present when Robinson committed the crimes, she had remained in the vehicle and had not participated in any way. In other words, she was “merely present,” and did not commit any crime. Defense counsel argued in his closing argument that
there is absolutely no evidence that Chelsea did anything while Antonio Robinson was rifling through the car and putting the stuff into her car. You will not find in the instructions anything that says that a person who’s sitting there, has any duty to run away, has any duty to drive away, has any duty to do anything.
He stressed that “[the law] requires that she plan or agree with Mr. Robinson to commit this offense, and that she’s actually aiding him. She didn’t do anything to aid him. She sat there. There’s no requirement under the law that she affirmatively do anything.”
¶15 Though defense counsel argued that mere presence was insufficient to establish that Chafee was involved in the crimes, he failed to offer the following standard jury instruction, approved by this Court as one of the instructions that correctly and adequately instructs the jury on the law of accountability, State v. Kills on Top, 243 Mont. 56, 92, 793 P.2d 1273, 1298 (1990):
*271 Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant was involved in the crime. To be responsible, you must find beyond reasonable doubt that the defendant was a participant and not merely a knowing spectator.
¶16 On appeal, Chafee argues that her counsel’s failure to offer a “mere presence” jury instruction was not based on reasonable or sound professional judgment, and that it prejudiced her right to a fair trial. The State counters that defense Counsel’s failure to request the instruction “was not deficient performance, because the evidence demonstrated Chafee’s direct involvement and positive actions to aid, abet, promote, and facilitate Robinson’s criminal acts.”
¶ 17 A defendant’s right to effective assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and by Article II, Section 24 of the Montana Constitution.
Before reaching the merits of an ineffective assistance of counsel claim in a direct appeal, we must first determine whether the allegations are properly before the Court on appeal or whether the claim should be raised in a petition for post-conviction relief pursuant to § 46-21-101, MCA.
Ugatde, ¶ 65 (citation and internal quotation marks omitted). We will not address a claim on appeal if it relates to matters outside of the record, Ugalde, ¶ 65 (citation omitted), unless it is unnecessary in the first instance to ask “why” counsel did or did not perform as alleged and seek an answer by reference to the record. State v. Kougl, 2004 MT 243, ¶¶ 14-15, 323 Mont. 6, 97 P.3d 1095 (citation omitted). For example, it is unnecessary to ask “why” counsel performed as he did when there is “no plausible justification” for defense counsel’s action or inaction. Kougl, ¶ 15.
¶18 As noted, defense counsel argued to the jury that Chafee’s mere presence at the scene was insufficient to support a conviction; however, he failed to offer the jury instruction that would have informed the jury that his argument was legally correct. The prosecutor was able to capitalize on this omission by arguing in closing for a guilty verdict because “[ejven if she never got out of the vehicle, she wasn’t just sitting there. She sat there while she let Antonio Robinson use her vehicle to load up this stolen stuff.” He also told the jury that when people get into a mess, the law “imposes an obligation on them to do something to -undo what they had done.” These arguments could havebeen directly refuted had defense counsel offered the omitted instruction. Under these circumstances, there was no *272 plausible justification for the failure of defense counsel to offer the “mere presence” jury instruction.
¶19 We analyze Chafee’s claim of ineffective assistance of counsel under the two-part test set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668,104 S. Ct. 2052 (1984). Ugalde, ¶ 66. A defendant must prove both: “(1) that counsel's performance was deficient; and (2) that counsel’s deficient performance prejudiced the defense.” Ugalde, ¶ 66 (citation omitted). Performance falling below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances is deficient performance. Ugalde, ¶ 75 (citation omitted). We “indulgle] a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.” Ugalde, ¶ 75 (citation and internal quotation marks omitted). However, “the failure to offer [a] potentially beneficial instruction, when that failure is not part of counsel’s trial strategy, is an error so serious that it falls outside the range of competence required of attorneys in criminal cases.” Garrett v. State, 2005 MT 197, ¶ 24, 328 Mont. 165, 119 P.3d 55 (citation and internal quotation marks omitted).
¶20 The law is well established that “mere presence at the scene of a crime is not enough to establish accountability, [although] the accused need not take an active part in any overt criminal acts to be adjudged criminally hable for the acts.” State v. Miller, 231 Mont. 497, 511,757 P.2d 1275,1284 (1988) (quoting State v. Bradford, 210 Mont. 130, 142, 683 P.2d 924, 930 (1984)).
Additionally, while mere presence and the failure to disapprove or oppose another’s commission of an offense are insufficient to sustain an accountability charge, these factors maybe considered by a jray, along with other circumstances, which may indicate whether the accused in some way aided or abetted the principal in the commission of the crime.
State v. Spang, 2002 MT 120, ¶ 43, 310 Mont. 52, 48 P.3d 727 (overruled in part on other grounds) (citation omitted). We are not in this case reviewing the sufficiency of evidence to sustain Chafee’s conviction, but the failure of counsel to offer an instruction that would allow the jury to consider “these factors.”
¶21 We conclude that defense counsel’s failure to offer this “potentially beneficial instruction” constituted deficient performance under the first prong of Strickland because there was no tactical reason for his failure to submit a “mere presence” instruction when his theory of the case was that mere presence at the scene was insufficient to support a *273 conviction. We likewise conclude that counsel’s conduct fell below an “objective standard of reasonableness.” But see Garrett, ¶¶ 24, 26 (citations omitted); see Kougl, ¶ 26 (citation omitted) (“[W]hat the judge tells the jury necessarily carries the force of law, while what the adversarial counsel tells the jury does not,” and closing arguments do not substitute for properjury instructions.).
¶22 The Dissent argues that there was sufficient evidence presented to call into question whether or not a “mere presence” instruction would have been appropriate. Dissent, ¶ 36. This argument presumes that counsel may have considered the appropriateness of the instruction and decided against offering it in light of the evidence presented. The problem with this argument is that it is belied by the manner in which defense counsel presented Chafee’s defense. As indicated in ¶ 14, counsel argued that his client was simply sitting there while Robinson committed his offense, and that she did not do anything to aid in the commission of the crime. Counsel further told the jury: “There’s no requirement under the law that she affirmatively do anything.” Chafee’s attorney urged the jury to acquit her on this basis. Because the mainstay of the defense was that Chafee’s presence at the scene was not sufficient to convict, there can be no plausible reason for failing to submit the very jury instruction that would have lent the force of law to counsel’s argument.
¶23 We now address whether Chafee has established sufficient prejudice under the second prong of Strickland. “Sufficient prejudice ... requires that the defendant demonstrate that a reasonable possibility exists that, but for counsel’s unprofessional error, the result of the proceeding would have been different.” Ugalde, ¶ 70 (citation and internal quotation marks omitted). A defendant must undermine confidence in the outcome but is not required to demonstrate that she would have been acquitted. Kougl, ¶ 25 (citation omitted).
¶24 In its presentation of evidence and closing arguments, the State emphasized that Chafee was present át the scene and did not take any action to prevent the crime or to report it to law enforcement. By reason of her counsel’s inadequate performance, Chafee was deprived of the chance to have the jury conclude under well-settled law that she was not guilty of the crimes charged simply because she was present at the crime scene. Had trial counsel offered and argued the “mere presence” jury instruction, the result of this case may have been favorable to Chafee. Hence, prejudice is apparent here.
¶25 Because we conclude that defense counsel's failure to offer the jury instruction warrants a new trial, we need not reach Chafee’s *274 arguments that her counsel was ineffective when he failed to object to evidence of other bad acts and failed to object to the State’s comments about Russell’s credibility.
¶26 2. Is Chafee entitled to a new trial on the basis of prosecutorial misconduct?
¶27 Though we are reversing this case on alternate grounds, we feel constrained to briefly address Chafee’s argument that the prosecutor improperly told the jurors to base their decision on factors other than the law and evidence. The State argues that the comments did not constitute error because they were made in the context of discussing the evidence presented and its evaluation. We disagree. The prosecutor urged the jurors to rely upon their hearts, souls, centers, and essences in making their decision. However, the instructions direct the jury to decide the case on the basis of the evidence and the law. We measure prosecutorial misconduct by reference to established norms of professional conduct, Ugalde, ¶ 43 (citation omitted), and “[argument urging the jury to decide the matter based upon factors other than those it is instructed to consider [by the court] is improper.” Sandoval v. Calderon, 241 F.3d 765, 776 (9th Cir. 2000). We conclude that the cited statements by the prosecutor were improper.
¶28 3. Is Chafee entitled to a new trial based upon cumulative error? ¶29 We decline to address the question of whether Chafee is entitled to a new trial pursuant to the cumulative error doctrine given our resolution of Issue One.
CONCLUSION
¶30 Based on the foregoing, we vacate the judgment of the District Court and remand this case for a new trial on the charges of accountability for theft and accountability for arson.
JUSTICE WHEAT, SHEA and BAKER concur.